FILED
2012 SEP 12 AM 10: 14
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY_____

ERIC H. HOLDER, JR.
Attorney General
THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division
STEVEN H. ROSENBAUM
Chief
DONNA M. MURPHY
Principal Deputy Chief
COTY R. MONTAG
Trial Attorney
Calif. Bar No. 255703
E-mail: Coty.Montag@usdoj.gov
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue, N.W. – G Street
Washington, D.C. 20530
Tel: (202) 305-0122
Fax: (202) 514-1116

ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Chief, Civil Division
SEKRET SNEED
Assistant United States Attorney
Calif. Bar No. 217193
E-mail: Sekret.Sneed@usdoj.gov
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, CA 90012
Tel: (213) 894-3551
Fax: (213) 894-7819

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LUTHER BURBANK SAVINGS,<br><br>Defendant. | CV12-7809 -JAK<br>(FMOx)<br><br>**COMPLAINT** |

Plaintiff, United States of America, alleges:

## INTRODUCTION

1. This action is brought by the United States to enforce the provisions of the Fair Housing Act, 42 U.S.C. §§ 3601-3619 ("FHA"), and the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f ("ECOA").

2. For five years, from 2006 through mid-2011, Defendant Luther Burbank Savings ("Luther" or "Defendant") enforced a $400,000 minimum loan amount policy for its wholesale single-family residential mortgage loan program. This policy or practice had a disparate impact on the basis of race and national origin and violates the FHA and ECOA.

3. From 2006 through 2010, Luther originated very few single-family residential mortgage loans in majority-minority census tracts (with a non-white population greater than 50%)[1] throughout California. For example, from 2006 through 2010, Luther originated only 5.2% of its single-family residential mortgage loans in majority-minority census tracts in the greater Los Angeles area. During the same time period, other prime lenders in this area, which made a similar volume of single-family residential loans as Luther, originated 41.7% of their single-family residential mortgage loans in majority-minority census tracts.

---

[1] Most of the majority-minority census tracts in California are composed of majority-African-American and Hispanic tracts. For example, according to the 2010 U.S. Census, approximately 70% of the majority-minority census tracts in the greater Los Angeles area have a majority African-American and Hispanic population.

4. From 2006 through 2010, Luther originated very few single-family residential mortgage loans to African-American or Hispanic borrowers throughout California. In the greater Los Angeles area, for example, only 5.8% of Luther's single-family residential mortgage loans were made to African-American and Hispanic borrowers. During that same time period, other prime lenders in the greater Los Angeles area, which made a similar volume of single-family residential loans as Luther, originated 31.8% of their single-family residential mortgage loans to African-American or Hispanic borrowers.

5. Luther continued its $400,000 minimum loan amount policy in the face of its knowledge that its low level of lending to African-American and Hispanic borrowers, and in majority-minority census tracts, was attributable to the policy. Luther continued its minimum loan amount policy until June 2011, more than a year after its regulator identified the policy or practice as potentially discriminatory and referred the issue to the Department of Justice pursuant to ECOA.

6. Since June 2011, Luther has operated with a $20,000 minimum loan amount policy for single-family residential mortgage loans that has not produced adverse consequences to its lending business.

7. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1345, 42 U.S.C. § 3614, and 15 U.S.C. § 1691e(h). Venue is appropriate pursuant to 28 U.S.C. § 1391.

COMPLAINT

## PARTIES

8. Luther is a federally-chartered stock institution headquartered in Santa Rosa, California. As of June 30, 2012, Luther had $3.7 billion in assets. Luther previously was subject to the regulatory authority of the Office of Thrift Supervision ("OTS"). Since July 21, 2011, Luther has been subject to the regulatory authority of the Office of the Comptroller of the Currency ("OCC").

9. Luther's principal activity is real estate lending, with an emphasis on apartment and commercial real estate loans.[2] Luther also offers 3- and 5-year hybrid adjustable-rate single-family (defined by the Home Mortgage Disclosure Act ("HMDA"), 28 U.S.C. §§ 2801-2810, as dwellings with 1-4 units) residential mortgage loans through its wholesale and retail channels. All references to "single-family residential loans" in this Complaint refer to owner-occupied, single-family residential mortgage loans.

10. Luther is subject to the federal laws governing fair lending, including the FHA and ECOA and their respective implementing regulations, the fair housing regulations of the Department of Housing and Urban Development, 24 C.F.R. § 100.1, *et seq.*, and Regulation B of the Consumer Financial Protection Bureau, 12 C.F.R. § 1002.1, *et seq.* The FHA and ECOA prohibit financial institutions from

---

[2] Defendant's multi-family lending program is not at issue in this Complaint.

discriminating on the basis of, *inter alia*, race and national origin in their mortgage lending practices.

## FACTUAL ALLEGATIONS

11. Beginning in 2009, the OTS conducted an examination of Luther's wholesale single-family residential lending in the Los Angeles-Long Beach-Riverside Combined Metropolitan Statistical Area ("Los Angeles CMSA") and the San Jose-San Francisco-Oakland CMSA to evaluate compliance with the FHA and ECOA.[3] During the examination, the OTS determined that Luther had established a minimum loan amount of $400,000 in Southern California and $800,000 in Northern California (later reduced to $400,000) for its wholesale single-family residential lending program. Based on analysis of Luther's 2008 applications and originations for single-family residential loans, the OTS found reason to believe that Luther's minimum loan amount policy had a disparate impact in violation of the FHA and ECOA. On March 8, 2010, following the examination described above, the OTS referred the matter to the Attorney General for appropriate action pursuant to 15 U.S.C. § 1691e(g).

12. Luther operates throughout the state of California. From 2006 through 2010, according to data reported pursuant to HMDA, Defendant originated 584 single-family residential loans totaling $793.2 million secured by single-family residential

---

[3] For purposes of this Complaint, all metropolitan statistical areas cited herein use the definitions provided by the Office of Management and Budget in December 2009.

property in California.[4] Approximately 62.8% of Defendant's single-family residential loans originated from 2006 through 2010 were secured by properties located in the Los Angeles CMSA. Luther originated 18.5% of its single-family residential loans in the San Diego-Carlsbad-San Marcos Metropolitan Statistical Area ("San Diego MSA"); 6.5% in the San Francisco-San Mateo-Redwood City Metropolitan Division ("San Francisco MD"); and 6.3% in the Santa Barbara-Santa Maria-Goleta MSA ("Santa Barbara MSA"). Collectively, Luther originated about 94% of its single-family residential loans in these areas, which are referred to herein as "the primary areas in California in which Luther operated from 2006 through 2010."

13. From 2006 through 2010, according to data maintained by Luther, the bank originated 94% of its single-family residential loans through its wholesale channel and 6% of such loans through its retail channel.[5] Luther arranged its single-family residential wholesale loans through a network of mortgage brokers. Like other wholesale lenders, Luther communicated to brokers the particular terms on which it was willing to make loans, including acceptable interest rates, points, and loan amounts for its loan products, through rate sheets that it distributed periodically. From 2006, when it

---

[4] The data and analyses described in paragraphs 12-17 of this complaint are based on data publicly reported by Luther and other residential mortgage lenders pursuant to HMDA.

[5] From 2006 through 2010, Luther had a formal $20,000 minimum loan amount policy for its retail channel. According to data maintained by the bank, Luther's average retail loan amount from 2006 through 2010 was $499,750, substantially higher than the threshold imposed by the minimum loan amount policy in the wholesale channel. During this time period, Luther made only 10 single-family residential loans less than $400,000 through its retail channel. As of June 2011, the $20,000 policy now applies to the bank's retail and wholesale single-family residential lending program.

COMPLAINT

created its single-family residential loan unit, until mid-2011, Luther required a minimum loan amount of at least $400,000 for all single-family residential loans originated through its wholesale channel (referred to herein as the "minimum loan amount policy"). During this time period, Luther's rate sheets specified that the price range for its wholesale single-family residential mortgage program was $400,000 to $5,000,000.

14. Statistical analyses of Luther's single-family residential loan originations from 2006 through 2010 show that Luther's $400,000 minimum loan amount policy had a disparate impact both on African-American and Hispanic borrowers and on the residents of majority-minority census tracts in the primary areas in California in which Luther operated.[6] These analyses demonstrate statistically significant[7] disparities in the origination of loans to African-American and Hispanic borrowers and residents of majority-minority census tracts when the primary areas in which Luther operated are combined and in separate analyses of those primary areas.

15. From 2006 through 2010, Luther originated 550 single-family residential loans in the primary areas of California in which it operated through its wholesale and

---

[6] Separate statistical analyses of Luther's *applications* in the primary areas of California in which Luther operated from 2006 through 2010 also demonstrate a statistically significant failure by Luther to generate applications from African-American and Hispanic borrowers and majority-minority census tracts at a level equal to its peer lenders.

[7] Statistical significance is a measure of probability that an observed outcome would not have occurred by chance. As used in this Complaint, an outcome is statistically significant if the probability that it could have occurred by chance is less than 5%.

retail channels. Only 27, or 4.9%, of these loans were originated in majority-minority census tracts. During that same time period, other prime lenders in these areas, which made a similar volume of single-family residential loans as Luther, originated approximately 38.7% of their loans – a proportion more than seven times as high as Luther – from majority-minority census tracts. These disparities are statistically significant. The statistically significant disparities in each of the primary areas are summarized in Table 1:

Table 1: Luther vs. Peer Group (HMDA Originations from 2006 through 2010 in Majority-Minority Tracts)

| Geographic Area | Similar Prime Lenders Loans in Majority-Minority Tracts | Luther Loans in Majority-Minority Tracts |
|---|---|---|
| Los Angeles CMSA | 41.7% | 5.2% |
| San Diego MSA | 28.8% | 0.9% |
| San Francisco MD | 29.7% | 10.5% |

16. From 2006 through 2010, Luther originated 380 single-family residential loans in the primary areas of California in which it operated for which the race or ethnicity of the borrower was identified. Of these, Luther originated 85% to white borrowers and 5.5% to African-American and Hispanic borrowers. During that same time period, other prime lenders in these areas, which made a similar volume of single-family residential loans as Luther, originated approximately 30.4% of their loans – a proportion more than five times as high as Luther – to African-American and Hispanic borrowers. These disparities are statistically significant. The statistically significant disparities in each of the primary areas are summarized in Table 2:

- 8 -

COMPLAINT

Table 2: Luther vs. Peer Group (HMDA Originations from 2006 through 2010 to African-American and Hispanic Borrowers)

| Geographic Area | Similar Prime Lenders Loans to African-American and Hispanic Borrowers | Luther Loans to American and Hispanic Borrowers |
|---|---|---|
| Los Angeles CMSA | 34.2% | 5.8% |
| San Diego MSA | 21.1% | 6.3% |
| Santa Barbara MSA | 24.8% | 0% |

17. Approximately 33% of the single-family residential loans originated to white borrowers from 2006 through 2010 in the primary areas in California in which Luther operated were above $400,000, while only 23% of the loans originated to African-American borrowers and 20% of the loans originated to Hispanic borrowers exceeded $400,000. Additionally, approximately 36% of the single-family residential loans originated in majority-white census tracts from 2006 through 2010 in the primary areas in California in which Luther operated were above $400,000, while only 21% of the loans originated in majority-minority census tracts in these areas exceeded $400,000.

18. Luther has been aware of its low level of lending to minorities for years. In 2009, Defendant's Chief Residential Lending Officer prepared an assessment of Luther's 2008 single-family residential lending activity. The report stated that in 2008, Luther originated only one loan to an African-American borrower and three loans to Hispanic borrowers from all areas in which Defendant operated that year. The report acknowledged that Luther had a low number of minority applicants and concluded that

COMPLAINT

Luther needed to increase its applications to minorities. Luther conducted follow-up assessments that analyzed its lending to minorities in 2009 and 2010. Both follow-up assessments found no improvement in the number of minority originations from the previous assessments and once again concluded that Luther needed to increase its minority lending. These assessments also acknowledged that Luther's multi-family lending program must be analyzed separately from its single-family residential lending program, because of the numerous dissimilar components to each group's business process. None of these assessments referenced the minimum loan amount policy or considered whether the policy has played a role in its low level of lending to minorities and in majority-minority census tracts. Luther did not terminate its $400,000 minimum loan amount policy until June 2011.

19. Luther's $400,000 minimum loan amount policy has resulted in low levels of single-family residential lending to African-American and Hispanic borrowers and in majority-minority census tracts. This $400,000 minimum loan amount policy has had a disparate impact on African-American and Hispanic borrowers and residents of majority-minority census tracts in the primary areas in California in which Luther operated from 2006 through 2010. This policy and practice is not justified by business necessity or legitimate business considerations.

## FAIR HOUSING ACT AND EQUAL CREDIT OPPORTUNITY ACT VIOLATIONS

20. Defendant's actions as alleged herein constitute:

   a. Discrimination on the basis of race or national origin in making available, or in the terms or conditions of residential real estate-related transactions, in violation of the FHA, 42 U.S.C. § 3605(a);

   b. The making unavailable or denial of dwellings to persons because of race or national origin in violation of the FHA, 42 U.S.C. § 3604(a);

   c. Discrimination on the basis of race or national origin in the terms, conditions, or privileges of the provision of services or facilities in connection with the sale or rental of dwellings, in violation of the FHA, 42 U.S.C. § 3604(b); and

   d. Discrimination against applicants with respect to credit transactions, on the basis of race or national origin in violation of ECOA, 15 U.S.C. § 1691(a)(1).

21. Defendant's policy and practice as alleged herein constitutes:

   a. A pattern or practice of resistance to the full enjoyment of rights secured by the FHA, 42 U.S.C. §§ 3601 *et seq.*, and ECOA, 15 U.S.C. § 1691e(h); and

   b. A denial of rights granted by the FHA to a group of persons that raises an issue of general public importance.

22. Persons who have been victims of Defendant's discriminatory policy and practice are aggrieved persons as defined in 42 U.S.C. § 3602(i) and as described in ECOA, 15 U.S.C. § 1691(e)(i), and have suffered damages as a result of Defendant's conduct in violation of both the FHA and ECOA.

- 11 -

COMPLAINT

23. The discriminatory policy and practice of Defendant has been intentional and willful, and implemented with reckless disregard for the rights of African-American and Hispanic borrowers and residents of majority-minority census tracts in the primary areas of California in which the bank operates.

## RELIEF REQUESTED

WHEREFORE, the United States prays that the Court enter an ORDER that:

(1) Declares that the policies and practices of Defendant constitute a violation of the FHA and ECOA;

(2) Enjoins Defendant, its agents, employees, and successors, and all other persons in active concert or participation with Defendant, from:

(A) Discriminating on the basis of race or national origin with respect to making available, or in the terms or conditions of, a residential real estate-related transaction, or the sale of a dwelling;

(B) Discriminating on the basis of race or national origin against any person with respect to any aspect of a credit transaction;

(C) Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of Defendant's unlawful practices to the position they would be in but for the discriminatory conduct;

(D) Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of Defendant's unlawful

practices; and to implement policies and procedures to ensure that all borrowers have an equal opportunity to seek and obtain loans on a non-discriminatory basis and with non-discriminatory terms and conditions;

(3) Awards monetary damages to all the victims of Defendant's discriminatory policies and practices for the injuries caused by Defendant, pursuant to 42 U.S.C. § 3614(d)(1)(B) and 15 U.S.C. § 1691e(h); and

(4) Assesses a civil penalty against Defendant in an amount authorized by 42 U.S.C. § 3614(d)(1)(C), in order to vindicate the public interest.

The United States further prays for such additional relief as the interests of justice may require.

ERIC H. HOLDER, JR.
Attorney General

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

ANDRÉ BIROTTE JR.
United States Attorney
Central District of California

STEVEN H. ROSENBAUM
Chief

LEON W. WEIDMAN
Civil Chief, Civil Division
Central District of California

SEKRET SNEED
Assistant United States Attorney
Calif. Bar No. 217193
Central District of California
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, CA 90012
(213) 894-3551 (phone)
(213) 894-7819 (fax)
Email: Sekret.Sneed@usdoj.gov

DONNA M. MURPHY
Principal Deputy Chief
COTY R. MONTAG
Trial Attorney
Calif. Bar No. 255703
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue, N.W. – G St.
Washington, D.C. 20530
(202) 305-0122 (phone)
(202) 514-1116 (fax)
E-mail: Coty.Montag@usdoj.gov

- 13 -

COMPLAINT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge John Kronstadt and the assigned discovery Magistrate Judge is Fernando M. Olguin.

The case number on all documents filed with the Court should read as follows:

**CV12- 7809 JAK (FMOx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:



| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)   NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

ORIGINAL

Coty R. Montag (CA SBN 255703)
U.S. Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section - G Street
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA | CASE NUMBER |
|---|---|
| PLAINTIFF(S) v. LUTHER BURBANK SAVINGS DEFENDANT(S). | CV12-7809 JAK (FMOx) SUMMONS |

TO: DEFENDANT(S): LUTHER BURBANK SAVINGS

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Coty R. Montag_____, whose address is _950 Pennsylvania Avenue, NW - G St., Washington, DC 20530_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Dated: SEP 12 2012

Clerk, U.S. District Court

By: _____
       Deputy Clerk

(Seal of the Court)

[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].

CV-01 A (12/07)                    SUMMONS

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
United States of America

**DEFENDANTS**
Luther Burbank Savings

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Coty R. Montag (CA SBN 255703)
US Dept of Justice, Civil Rights Division, Housing & Civil Enforcement - G St
950 Pennsylvania Ave NW, Washington, DC 20530 202-305-0122

**Attorneys (If Known)**
Donna L. Wilson (CA SBN 186984)
BuckleySandler LLP
100 Wilshire Boulevard, Suite 1000
Santa Monica, CA 90401 (424) 203-1010

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☑ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No
☐ MONEY DEMANDED IN COMPLAINT: $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 USC 1691 et seq. and 42 USC 3601 et seq. - Race and national origin discrimination in home mortgage lending

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | | | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | | | FORFEITURE/ PENALTY | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | | |
| ☐ 810 Selective Service | | ☐ 355 Motor Vehicle Product Liability | | ☐ 610 Agriculture | PROPERTY RIGHTS |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 875 Customer Challenge 12 USC 3410 | | | ☐ 441 Voting | | ☐ 830 Patent |
| | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 444 Welfare | | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | | | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | | | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | | ☐ 690 Other | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | ☑ 440 Other Civil Rights | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:** Case Number: **CV12-7809**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)    CIVIL COVER SHEET    Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☒ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____ Date September 12, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

**Key to Statistical codes relating to Social Security Cases:**

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |